UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ILYA FELIKSOVICH IOSILEVICH,

                  Plaintiff,

        v.

THE CITY OF NEW YORK; KEECHANT
SEWELL; ALEXANDER R. CEDILLO; POLICE
OFFICER PETER WOODBURN; POLICE
OFFICER JONATHAN ANDREWS; JULIA
NIKOLAYEVNA IVANISHINA; PRONAB
ADHIKARY; *and* JOHN DOES #3–5,

                  Defendants.
-------------------------------------------------------------x

**MEMORANDUM AND ORDER**
22-CV-3714 (RPK) (LB)

RACHEL P. KOVNER, United States District Judge:

     *Pro se* plaintiff Ilya Feliksovich Iosilevich, who is a former officer of the New York City Police Department ("NYPD"), brings this action against the City of New York, former NYPD Commissioner Keechant Sewell, NYPD Captain Alexander R. Cedillo, Julia Nikolayevna Ivanishina, NYPD Officer Pronab Adhikary, and five John Does—three NYPD officers and Adhikary's parents. The City, Captain Cedillo, and John Does #1 and #2, identified as NYPD Officers Peter Woodburn and Jonathan Andrews (collectively, the "City defendants"), have moved to dismiss plaintiff's claims against them under Federal Rule of Civil Procedure 12(b)(6), as have Commissioner Sewell and Adhikary. For the reasons set forth below, the City defendants' motion to dismiss is granted in part and denied in part, and Commissioner Sewell's and Adhikary's motions to dismiss are granted.

**BACKGROUND**

**I.    Factual Allegations**

The following facts are taken from the operative complaint and assumed true for the purposes of this order.

On January 26, 2021, plaintiff attempted to serve Ivanishina, his ex-wife, and Adhikary, her co-habitant, with a complaint and summons issued by the Civil Court of the City of New York, Kings County.  Redacted Compl. ¶ 11 (Dkt. #5); *id.* at 41 (ECF pagination).  Plaintiff "lightly knocked" on their apartment door and heard Adhikary say that Ivanishina should call the police and that he "will shoot" plaintiff "[i]f he comes in."  *Id.* ¶ 13.  Plaintiff left after "approximately 1-2 minutes" without the door being opened. *Id.* ¶ 16–17.  Ivanishina called the police and "made a false Complaint Report and Domestic Incident Report upon arrival of police officers from [the] 62nd Precinct," stating that plaintiff "was banging on and kicking the door with [his] feet." *Id.* ¶ 20.  Plaintiff alleges that Adhikary, who was a NYPD officer at the time of the events in this case, was motivated by a "personal vendetta" against plaintiff and "coach[ed]" Ivanishina "on what to say in the Domestic Incident Report [in] order to later obtain [an] Order of Protection against" plaintiff. *Id.* ¶¶ 22–24 (emphasis omitted).  The officers called by Ivanishina and Adhikary took pictures of the apartment door which "show[ed] the door still white with no marks . . . , even though the snow was still on the ground [that] day." *Id.* ¶¶ 29, 32.

On or about February 3, 2021, Ivanishina and Adhikary contacted plaintiff's second wife, who agreed to file a second criminal complaint against plaintiff. *Id.* ¶ 35.

Captain Cedillo "made [the] determination to initiate [plaintiff's] arrest by giving orders to" NYPD officers including defendants Woodburn and Andrews. *Id.* ¶ 9; *see id.* ¶ 36; Opp'n to City Defs.' Mot. to Dismiss 11–12 (Dkt. #39) (explaining that Woodburn and Andrews were two of the officers executing arrest).  Before ordering plaintiff's arrest, Captain Cedillo reviewed

Ivanishina's complaint, the pictures that officers had taken of Ivanishina's apartment door, and "previous complaints filed against" plaintiff by Ivanishina, including an allegedly false allegation of assault in 2014 that was investigated by the NYPD.  Redacted Compl. ¶¶ 30–34.

Captain Cedillo executed the arrest on February 3, 2021, along with Officers Woodburn and Andrews.  *Id.* ¶ 36; Opp'n to City Defs.' Mot. to Dismiss 11–12.  According to plaintiff, Captain Cedillo pulled over plaintiff's car, and Officers Andrews and Woodburn then blocked plaintiff's car with another vehicle.  Opp'n to City Defs.' Mot. to Dismiss 12.  Officer Andrews then placed plaintiff under arrest.  Redacted Compl. ¶ 36; *see* Opp'n to City Defs.' Mot. to Dismiss 12.  When plaintiff asked Officer Andrews why he was being arrested, Officer Andrews told him, "I don't know.  It's coming from the Captain, not me.  I am just assigned to process your arrest."  Redacted Compl. ¶ 37; *see* Opp'n to City Defs.' Mot. to Dismiss 12.

Afterward, while plaintiff was handcuffed in Captain Cedillo's office, Cedillo told plaintiff that he "should have been fired" from the NYPD instead of being allowed to resign, that Cedillo would "charge [plaintiff] with crimes that took place in 2014, even though [plaintiff] might beat" the charges, and that Cedillo would "drop a book" on plaintiff.  Redacted Compl. ¶ 39; Opp'n to City Defs.' Mot. to Dismiss 12.  At the station, plaintiff was also informed of a third criminal complaint filed against him by Adhikary's parents.  Redacted Compl. ¶ 41.  Plaintiff asserts that Adhikary "'coached' his parents . . . to make" the third complaint.  *Ibid.*

Plaintiff was arraigned on February 4, 2021, apparently on charges in the complaint filed by Ivanishina, but those charges were dismissed the following month.  *Id.* ¶¶ 20, 43; *id.* Ex. A.

## II.   Procedural History

Plaintiff filed this lawsuit in June 2022.  Compl. (Dkt. #1).  After dismissal of some claims through an earlier order, Mem. & Order 5–6 (Dkt. #4), the following claims remain: false arrest and malicious prosecution under Section 1983 against Adhikary, Captain Cedillo, and Officers

Woodburn and Andrews, Redacted Compl. ¶¶ 45–46; *id.* at 9; false arrest and malicious prosecution under New York common law and Article I of the New York State Constitution against Adhikary, Captain Cedillo, and Officers Woodburn and Andrews, *id.* ¶¶ 45–46; municipal liability under Section 1983 against the City, *id.* ¶¶54–59; and intentional infliction of emotion distress ("IIED") and negligent infliction of emotional distress ("NIED") against all defendants, *id.* ¶ 60.

The City defendants, Commissioner Sewell, and Adhikary (collectively, the "moving defendants") now move under Federal Rule of Civil Procedure 12(b)(6) to dismiss all of plaintiff's remaining claims against them for failure to state a claim, except that the City defendants do not argue for dismissal of plaintiff's malicious-prosecution claims. *See generally* City Defs.' Mot. to Dismiss (Dkt. #27); Reply in Supp. of Defs.' Mot. to Dismiss ("City Defs.' Reply") (Dkt. #43); Mem. in Supp. of Adhikary's Mot. to Dismiss ("Adhikary's Mot. to Dismiss") 5–7 (Dkt. #38); Reply in Supp. of Adhikary's Mot. to Dismiss ("Adhikary's Reply") (Dkt. #45); Mem. in Supp. of Defs.' Mot. to Dismiss ("Comm'r's Mot. to Dismiss") 7–8 (Dkt. #36). Plaintiff opposes Adhikary's and the City defendants' motions, *see generally* Opp'n to City Defs.' Mot. to Dismiss; Opp'n to Adhikary's Mot. to Dismiss (Dkt. #44), but not Commissioner Sewell's motion.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The facial "plausibility standard is not akin to a probability requirement," but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Twombly*, 550 U.S. at 556–57) (quotation marks omitted). In contrast, a

complaint fails to state a plausible claim when, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or when, as a matter of fact, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," *Iqbal*, 556 U.S. at 679.  Though the court must accept all facts alleged in the complaint as true, it need not adopt "[t]hreadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678.

When a plaintiff proceeds *pro se*, his complaint must be "liberally construed," and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quotation marks and citations omitted).  *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

To assess plausibility, courts consider the "allegations on the face of the complaint" as well as "documents that are attached to the complaint, incorporated in it by reference, integral to the complaint, or the proper subject of judicial notice."  *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020).  A court may also consider "factual allegations made by a *pro se* party in his papers opposing the motion" to dismiss.  *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013); *see Walker v. City of New York*, 367 F. Supp. 3d 39, 50 (S.D.N.Y. 2019).

## DISCUSSION

For the reasons set forth below, the City defendants' motion to dismiss is denied as to plaintiff's false-arrest claim against Captain Cedillo, but granted as to plaintiff's false-arrest claims against Officers Andrews and Woodburn.  The claims against Adhikary, the City, and Commissioner Sewell are also dismissed.

I.    **The City Defendants' Motion Is Granted in Part as to Plaintiff's False-Arrest Claims.**

The City defendants are not entitled to dismissal of plaintiff's false-arrest claim against Captain Cedillo, but the false-arrest claims against Officers Andrews and Woodburn are dismissed based on qualified immunity.

Under the Fourth Amendment, "[t]he elements of a false arrest . . . claim are that (1) a 'defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016)). "Claims for false arrest brought under Section 1983 are substantially the same as claims for false arrest under state law." *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (quotation marks and citation omitted). An arrest is privileged if "the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (citation omitted)).

Probable cause exists when a law enforcement officer has "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *United States v. Diaz*, 854 F.3d 197, 203 (2d Cir. 2017) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010)). A "victim's identification is typically sufficient to provide probable cause." *Stansbury v. Wertman*, 721 F.3d 84, 90 (2d Cir. 2013). But that is not necessarily the case when circumstances "raise doubts as to the victim's veracity." *Ibid.* (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)). Ultimately, the "failure to make a further inquiry when a reasonable person would have done so may be evidence of a lack of probable cause." *Manganiello*, 612 F.3d at 161 (citation omitted).

A police officer is entitled to qualified immunity for false arrest if the officer had at least "arguable probable cause to arrest the plaintiff." *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016) (quotation marks and citation omitted). Arguable probable cause exists if either (1) "it was objectively reasonable for the officer to believe that probable cause existed," or (2) "officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* at 633 (citation omitted). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "[T]he defense of qualified immunity [generally] cannot support the grant of a Rule 12(b)(6) motion . . . [unless] 'the facts supporting the defense appear on the face of the complaint.'" *Hyman v. Abrams*, 630 F. App'x 40, 41–42 (2d Cir. 2015) (quoting *McKenna v. Wright*, 386 F.3d 432, 435–36 (2d Cir. 2004)). Because New York common-law adheres to a similar doctrine, an officer who is "entitled to qualified immunity under federal law" is similarly protected from liability for a "state law false arrest claim." *Jenkins v. City of New York*, 478 F.3d 76, 86–87 (2d Cir. 2007); *accord Brathwaite v. City of New York*, No. 19-CV-09235 (JLR), 2023 WL 5713189, at *4–5 (S.D.N.Y. Sept. 5, 2023).

### A.    Captain Cedillo

Under these principles, dismissal of plaintiff's constitutional and state false-arrest claims against Captain Cedillo would be improper.

The City defendants argue that plaintiff's false-arrest claim against Captain Cedillo should be dismissed because Ivanishina's complaint to officers provided at least arguable probable cause to believe that plaintiff committed aggravated harassment in the second degree. *See* City Defs.' Mot. to Dismiss 5–6; City Defs.' Reply 3–5. But while a witness's statement "is typically sufficient to provide probable cause," that is not necessarily the case when circumstances "raise

doubts as to the victim's veracity." *Stansbury v. Wertman*, 721 F.3d 84, 90 (2d Cir. 2013) (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)).   For example, if a "bitter prior relationship exists and is known to the arresting officer before the arrest is made, the complaint alone may not constitute probable cause; the officer may need to investigate further." *Sankar v. City of New York*, 867 F. Supp. 2d 297, 306 (E.D.N.Y. 2012) (emphasis and internal quotation marks removed) (quoting *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998)).

Here, plaintiff's complaint alleges circumstances that plausibly should have raised doubts for Captain Cedillo as to Ivanishina's veracity.   Specifically, the complaint alleges that Captain Cedillo reviewed previous complaints by Ivanishina against plaintiff, including one which alleged that plaintiff assaulted her in 2014, and that Cedillo had also reviewed Internal Affairs records, *see id.* ¶¶ 30, 33–34, and knew that plaintiff "was investigated for [that] 2014 incident . . . and [that he] was cleared by [t]he [NYPD's] Internal Affairs Bureau," Opp'n to City Defs.' Mot. to Dismiss 12.

Taking these allegations as true, they plausibly suggest that Captain Cedillo was aware that Ivanishina had previously filed at least one complaint against plaintiff that had been investigated but not substantiated.   With nothing more than plaintiff's complaint before the Court, those allegations preclude a finding of arguable probable cause.   *See, e.g.*, *McGee v. Doe*, 568 F. App'x 32, 38 (2d Cir. 2014) (summary order) (reversing dismissal on the basis of qualified immunity where putative victim's "statement to the police was offered" at the direction of a co-defendant with whom police officers knew plaintiff to have a "private dispute"); *Sankar*, 867 F. Supp. 2d at 306–07 (denying summary judgment where officers arrested plaintiff based on complainant's statement without interviewing plaintiff despite being "aware of the contentious relationship that existed between [the putative victim] and plaintiff"); *Bullard v. City of New York*, 240 F. Supp. 2d

292, 299 (S.D.N.Y. 2003) (denying motion to dismiss where "officer [] allegedly knew that [plaintiff] had been arrested earlier based on questionable accusations by [one accuser], and also had reason to question the credibility of [another accuser] from the information she provided for an earlier arrest").

The City defendants are mistaken to contend that at least arguable probable cause is established because Ivanishina's complaint was corroborated by a second criminal complaint against plaintiff, which was filed by plaintiff's second wife. *See* City Defs.' Mot. to Dismiss 5–7; City Defs.' Reply 3; Redacted Compl. ¶ 35. The motion to dismiss is measured against the facts set out in plaintiff's complaint, and the complaint lacks any factual detail about what the additional criminal complaint alleged. *See* Redacted Compl. ¶ 35 (stating only that the complaint was "false" and "against [plaintiff]"). Without any detail about the contents of the additional criminal complaint, the Court cannot find that it corroborates Ivanishina's allegations.

## B.    Officers Woodburn and Andrews

Officers Woodburn and Andrews, however, are entitled to qualified immunity on plaintiff's false-arrest claims because the complaint alleges that they were executing an arrest directed by their superior officer, Captain Cedillo, and does not suggest those officers had any reason to doubt the legality of Captain Cedillo's direction.

A police officer who merely executes an arrest at the direction of another police officer is entitled to qualified immunity for false arrest in the absence of evidence that the officer should have questioned whether the arrest was lawful. *Loria v. Gorman*, 306 F.3d 1271, 1288 (2d Cir. 2002) ("Absent significant indications to the contrary, an officer is entitled to rely on his fellow officer's determination that an arrest was lawful."); *Anthony v. City of New York*, 339 F.3d 129, 138 (2d Cir. 2003) (holding that officer was entitled to qualified immunity; relying on *Bilida v.*

*McCleod*, 211 F.3d 166, 175 (1st Cir. 2000) (affirming grant of qualified immunity where defendant officers "[u]pon receiving an explicit order . . . had every reason to think that [the] Captain [] had secured a warrant or concluded . . . that one was unnecessary")).

Here, the complaint simply alleges that Officers Andrews and Woodburn executed plaintiff's arrest at Captain Cedillo's direction, without suggesting that either officer played a role in the underlying investigation or had reason to question their superior's command. Plaintiff alleges that Captain Cedillo reviewed Ivanishina's criminal complaint and other materials and then "made [the] determination to initiate [plaintiff's] arrest by giving orders to" Andrews, who executed the arrest, and Woodburn, whom plaintiff describes as the arresting officer's partner. Redacted Compl. ¶ 9; *see id.* ¶ 36; Opp'n to City Defs.' Mot. to Dismiss 11–12. Plaintiff does not suggest that Officers Andrews or Woodburn had any role in investigating Ivanishina's complaint or any access to information calling her credibility into question. Indeed, plaintiff alleges that Officer Andrews told him, at the time of arrest, that the arrest order was "coming from the Captain," and that he was "just assigned to process [plaintiff's] arrest." *See* Redacted Compl. ¶ 37; Opp'n to City Defs. Mot. to Dismiss 12 (identifying Officer Andrews as the officer at issue).

Because plaintiff's complaint thus makes clear that Officers Andrews and Woodburn arrested plaintiff based on "an explicit order" for their superior, *Bilida*, 211 F.3d at 175, while alleging no facts suggesting that either officer was aware of circumstances casting doubt on that order's legality, those officers are entitled to qualified immunity for false arrest. As a result, while the City's motion to dismiss is denied with respect to Captain Cedillo, it is granted as to Officers Andrews and Woodburn.

## II.   Adhikary's Motion to Dismiss Is Granted as to Plaintiff's False-Arrest and Malicious-Prosecution Claims.

Plaintiff fails to adequately plead claims for false arrest and malicious prosecution against Adhikary under either Section 1983 or state law.

### A.   Claims under Section 1983

Plaintiff does not adequately allege that Adhikary acted under the color of state law, as required to state a claim under Section 1983.

To state a Section 1983 claim, plaintiff must allege a constitutional violation committed under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).  Plaintiff asserts two theories under which Adhikary acted under the color of state law: (1) that Adhikary was acting in his capacity as a NYPD officer and (2) that even if Adhikary was acting in a private capacity, he engaged in joint action with the NYPD officer defendants.  *See* Opp'n to Adhikary's Mot. to Dismiss 11–13.  "[T]here is no bright line test for distinguishing" between a police officer's "personal pursuits" as a private actor from the officer's "activities taken under color of law." *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994).  Courts therefore "look at a variety of factors, including, *inter alia*, whether the officer: (1) was off-duty; (2) identified himself as an officer of the law; (3) was in uniform; (4) was authorized to make an arrest at the time; (5) was carrying handcuffs; (6) was carrying any weapons; (7) flashed a police badge; and (8) placed the plaintiff under arrest or otherwise detained her."  *Cotz v. Mastroeni*, 476 F. Supp. 2d 332, 372 (S.D.N.Y. 2007).  An individual engaging in conduct as a private actor can still be liable under Section 1983, but only if he "is a willful participant in joint action with the State or its agents."  *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980).  "Conclusory allegations that [the] private individual conspired or took concerted action with state actors will not suffice" to establish this element.  *Lienau v. Garcia*, No.

12-CV-6572 (ER), 2013 WL 6697834, at *5 (S.D.N.Y. Dec. 19, 2013) (citation and quotation marks omitted).

While Adhikary was allegedly an NYPD officer at the time of plaintiff's arrest, plaintiff has not plausibly alleged that Adhikary was engaging in anything other than private conduct during the incidents at issue.  Taking the facts in the complaint as true, Adhikary "was [in his] home and was off-duty" during the events of which plaintiff complains, "did not arrest" plaintiff," and merely helped "file[] a criminal complaint" against plaintiff, which "was then processed as any other complaint."  *Costello v. Norton*, No. 96-CV-1634, 1998 WL 743710, at *11 (N.D.N.Y. Oct. 21, 1998).  And while plaintiff alleges that Adhikary told Ivanishina that he would shoot plaintiff if he entered the apartment, *see* Redacted Compl. ¶ 13, plaintiff does not suggest that Adhikary's threat to shoot plaintiff was made "under the pretense of state law," *Costello*, 1998 WL 743710, at *11; *see Cooper v. City of New York*, No. 17-CV-1517 (NGG), 2018 WL 4762248, at *7 (E.D.N.Y. Sept. 29, 2018) (dismissing Section 1983 claim against off-duty police officer because although plaintiff alleged "that he felt [defendant] holding a firearm during the altercation," plaintiff did not "allege that [defendant] (1) was on-duty at the time of the altercation; (2) identified himself as an officer of the law; (3) wore a uniform or carried handcuffs; (4) revealed a police badge; or (5) placed plaintiff under arrest or otherwise detained him.").  Plaintiff's reliance on his "prior knowledge of [] Adhikary being a Police Officer" is misplaced, Opp'n to Adhikary's Mot. to Dismiss 11–12, because "plaintiff's subjective . . . awareness that [Adhikary] is a state official is irrelevant to the color of law analysis," *Doe v. Waraksa*, No. 06-CV-1262 (VLB), 2013 WL 597800, at *9 (D. Conn. Feb. 13, 2013), *aff'd*, 560 F. App'x 67 (2d Cir. 2014); *see also Pitchell*, 13 F.3d at 548–49.

Plaintiff also does not plausibly allege that Adhikary engaged in joint action with the police.  Plaintiff merely asserts that Adhikary coached *other* private individuals to file criminal complaints against plaintiff, *see* Redacted Compl. ¶¶ 22–24, 35, 41, but these sorts of conclusory allegations are insufficient to establish joint action.  *See Lienau*, 2013 WL 6697834, at *5.  And plaintiff otherwise "makes no reference to [Adhikary] having any communication with" a NYPD officer.  *Pulizotto v. McMahon*, 406 F. Supp. 3d 277, 304 (S.D.N.Y. 2019).  In any event, "providing false information to the police does not make a private individual . . . a state actor and liable under § 1983." *Baez v. JetBlue Airways*, 745 F. Supp. 2d 214, 221 (E.D.N.Y. 2010) (citation omitted).

Plaintiff's Section 1983 claims against Adhikary for false arrest and malicious prosecution are therefore dismissed.

## B.  Claims under State Law

Plaintiff also fails to adequately allege claims for false arrest and malicious prosecution against Adhikary under state law.  For a civilian to be liable for false arrest or malicious prosecution, he "must have affirmatively induced the [arresting] officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal, to the point where the officer is not acting of his own volition." *Mesiti v. Wegman*, 763 N.Y.S.2d 67, 69 (2d Dep't 2003) (quoting 59 N.Y. Jur. 2d, False Imprisonment and Malicious Prosecution § 37); *accord Washington v. Town of Greece*, 6 N.Y.S.3d 852, 854 (4th Dep't 2015); *Moorhouse v. Standard, N.Y.*, 997 N.Y.S.2d 127, 132 (1st Dep't 2014).  "Such an active role includes the provision of false information leading to an arrest, where the [complainant] lacked reasonable cause for their belief in the plaintiff's culpability," *TADCO Const. Corp. v. Dormitory Auth. of State of N.Y.*, 700 F. Supp. 2d 253, 269 (E.D.N.Y. 2010) (quotation marks and citation omitted);

*accord Pacicca v. Stead*, 456 F. App'x 9, 12 (2d Cir. 2011), but not simply where the complainant is mistaken, *see King v. Crossland Sav. Bank*, 111 F.3d 251, 257 (2d Cir. 1997) ("[I]f a defendant erroneously reports a suspected crime, but in no other way instigates the arrest, he is not liable for false [arrest]"); *Blanco v. Success Acad. Charter Sch., Inc.*, — F. Supp. 3d —, 2024 WL 965001, at *10 (S.D.N.Y. 2024).

Plaintiff's claims against Adhikary are dismissed because plaintiff has not set forth facts plausibly suggesting that Adhikary induced police officers to arrest plaintiff through involvement so extensive that the arresting officers were not acting under their own volition.  Plaintiff does not allege that Adhikary actually filed a criminal complaint or otherwise pressured *NYPD officers* to arrest plaintiff, only that Adhikary coached *other civilians* in how to file criminal complaints against plaintiff.  *See* Redacted Compl. ¶¶ 22–24, 35, 41.  And while plaintiff suggests that Adhikary himself made statements to police officers, *see id.* ¶ 26, he provides no detail about the contents of those statements—let alone sufficient detail to suggest that he provided the police with false information for which he lacked "a reasonable basis," *Pacicca*, 456 F. App'x at 12 (quoting *TADCO*, 700 F. Supp. 2d at 275).  Nor does plaintiff allege that Adhikary otherwise "instigate[d] the arrest" beyond making the unspecified false statements.  *King*, 111 F.3d at 257.  Plaintiff's state-law claims against Adhikary for false arrest and malicious prosecution are therefore dismissed.

## III.   Plaintiff's Section 1983 Claims against the City Are Dismissed.

Plaintiff's Section 1983 claim against the City is dismissed as inadequately pleaded.

Municipalities such as New York City are "not vicariously liable under [Section] 1983 for their employees' actions."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citation omitted).  Instead, they can be held liable under Section 1983 only if an "action pursuant to official municipal policy of some nature" caused the alleged deprivation of the plaintiff's rights.  *Monell v. Dep't of*

*Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978); *see Connick*, 563 U.S. at 60–61.  A plaintiff who seeks to hold a municipality liable under Section 1983 must allege (1) "an official policy or custom," that (2) "cause[d] the plaintiff to be subjected to," (3) a "denial" of a federally guaranteed right.  *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).  A plaintiff can allege a municipal policy or custom by pointing to "decisions of a government's lawmakers, the acts of its policymaking officials, . . . practices so persistent and widespread as to practically have the force of law" or, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights."  *Connick*, 563 U.S. at 61 (citations omitted).  Mere conclusory allegations that a policy, custom, or practice has led to a violation are insufficient to support a Section 1983 claim.  *See Butler v. Castro*, 896 F.2d 698, 700 (2d Cir. 1990).

Plaintiff's complaint asserts three bases for municipal liability: (1) a formal policy of arrest quotas; (2) *de facto* policies and customs the directly caused the alleged constitutional violation; and (3) the City's failure to train and supervise the officers allegedly responsible for that violation.  Redacted Compl. ¶¶ 57–59.  Plaintiff fails to adequately plead any of the three.

First, plaintiff fails to adequately plead that his arrest was the product of an unconstitutional NYPD policy involving arrest quotas.  Plaintiff lists several news articles from 2006 to 2011 suggesting that the NYPD imposed arrest quotas on police officers, and claims Captain Cedillo ordered plaintiff's arrest "not only to get his vengeance, but also to meet his quotas."  *Id.* ¶ 59.  Assuming *arguendo* that the news articles plausibly suggest a municipal policy of quotas tied to the arrests described in those articles, the complaint does not suggest that the policy was in place at the time of plaintiff's arrest in 2021, *see ibid.*, or give reason to conclude his arrest fell within that policy like those documented in the articles, *cf. Hunter v. City of New York*, 35 F. Supp. 3d

310, 324 (E.D.N.Y. 2014) ("Some courts have found that evidence of misconduct with strong similarities to a plaintiff's individual claim may suffice to allege a plausible claim of municipal liability.").  Instead, plaintiff fails to allege that an arrest quota contributed to his false arrest, other than his conclusory allegation that such a quota "also" motivated Captain Cedillo.  *See, e.g.*, *Zeng v. City of New York*, No. 19-CV-3218 (JGK), 2021 WL 1841683, at *5 (S.D.N.Y. May 7, 2021) ("The complaint references various cases and an article" but makes no non-conclusory "factual allegation to show that the policies alleged to have been in place in those unrelated cases are still in place and were linked to her alleged injuries."); *Sam v. City of New York*, No. 14-CV-3253 (CBA), 2014 WL 6682152, at *2 (E.D.N.Y. Nov. 24, 2014) (dismissing municipal-liability claim where plaintiff failed "to plead any facts to support the[] conclusory assertion[]" that "he was arrested as the result of a quota system for arrest" (quotation marks omitted)).

Second, plaintiff fails to plausibly allege the existence of *de facto* policies and customs the directly caused the alleged constitutional violation.  *See* Redacted Compl. ¶ 57.  Beyond the news articles discussed above, plaintiff "only points to the alleged constitutional deprivations that he suffered," and "fails to identify any other incidents that would indicate a pattern or practice." *Kiss v. Torres*, No. 21-CV-10391 (KMK), 2024 WL 1210941, at *23 (S.D.N.Y. Mar. 19, 2024) (collecting cases).  Plaintiff thus fails to adequately plead a municipal policy or custom sufficient to render the City liable for plaintiff's false arrest.  *See, e.g.*, *Vasquez v. City of New York*, No. 20-CV-4641 (ER), 2023 WL 8551715, at *5 (S.D.N.Y. Dec. 11, 2023) (collecting cases and observing that "courts dealing with *Monell* claims have disregarded the use of conclusory allegations that do not provide additional support that a plaintiff's experience is consistent with a larger pattern of similar conduct" (quotation marks and citation omitted)).

Finally, plaintiff fails to adequately plead municipal liability based on failure to adequately train or supervise the NYPD officers involved in his arrest.  *See* Redacted Compl. ¶ 58; Opp'n to City Defs.' Mot. to Dismiss 18–19; *id.* Exs. B–C.  To plead a *Monell* claim for failure to train, "a plaintiff must 'identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation.'"  *Alwan v. City of New York*, 311 F. Supp. 3d 570, 579 (E.D.N.Y. 2018) (quoting *Wray*, 490 F.3d at 196).  And to plead a *Monell* claim for failure to supervise, a plaintiff must plausibly allege that the city was "faced with a pattern of misconduct and [did] nothing, compelling the conclusion that the [city] has acquiesced in or tacitly authorized its subordinates' unlawful actions."  *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007).  Both failure-to-train and -supervise claims require that the city's "need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need."  *Ibid.* (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)) (noting that a deliberate indifference showing is required for both failure-to-train and -supervise claims)).

Plaintiff does not adequately allege a deficiency in the City's training program or an obvious pattern of misconduct by a defendant officer that could support liability for failure to train or supervise, because plaintiff's complaint includes no factual support for its assertion that the City failed to adequately train and supervise a defendant officer, other than the alleged misconduct plaintiff himself experienced.  *See, e.g.*, *Forrest v. Cnty. of Greene*, 676 F. Supp. 3d 69, 77 (N.D.N.Y. 2023) (dismissing *Monell* claims, including for failure to train and supervise, because "plaintiffs fail to allege any facts, beyond the isolated events" they experienced).  And even considering other instances of misconduct by Captain Cedillo that plaintiff alleges in his opposition

brief, *see* Opp'n to City Defs.' Mot. to Dismiss 18–19 (noting three settled lawsuits and one instance where the NYPD disciplined Cedillo), plaintiff still does not adequately plead a pattern of misconduct so obvious as to state a claim for municipal liability against the City.  *See Falls v. Campbell*, No. 17-CV-35 (KMK), 2019 WL 1255768, at *6 (S.D.N.Y. Mar. 19, 2019) (collecting cases and holding that "two lawsuits cited by Plaintiff," including one which settled, "are insufficient to establish a pattern of unconstitutional activity"); *Taranto v. Putnam Cnty.*, No. 21-CV-2455 (KMK), 2023 WL 6318280, at *20 (S.D.N.Y. Sept. 28, 2023) ("An allegation of numerous claims of the underlying constitutional wrong by itself is insufficient to raise an inference of deliberate indifference due to failure to supervise.  Rather, a plaintiff must allege that meaningful attempts to investigate repeated claims are absent." (brackets, ellipsis, quotation marks, and citation omitted)).

Plaintiff's Section 1983 claims against the City are therefore dismissed.

## IV.   Plaintiff Fails to Adequately Plead an IIED or NIED Claim.

Plaintiff does not adequately plead either an IIED or NIED claim.

### A.   Plaintiff does not adequately allege the sort of extreme and outrageous conduct necessary to sustain an IIED claim.

The misconduct plaintiff alleges does not meet New York's high bar for IIED claims.

To plead IIED in New York, the plaintiff must allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Chanko v. Am. Broad. Cos. Inc.*, 49 N.E.3d 1171, 1178 (N.Y. 2016) (citation omitted).   The "extreme and outrageous conduct" standard is "rigorous[] and difficult to satisfy."  *Conboy v. Am. Tel. & Tel. Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (quoting *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993)).  "The question of whether a complaint adequately alleges such grievous allegations is a question to be

determined by the Court." *Druschke v. Banana Republic, Inc.*, 359 F. Supp. 2d 308, 314 (S.D.N.Y. 2005) (citing *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999)).

Plaintiff does not adequately plead extreme and outrageous conduct as to defendants Andrews, Woodburn, or Sewell.  Plaintiff has not alleged that Commissioner Sewell engaged in any misconduct at all.  And with respect to Officers Andrews and Woodburn, plaintiff alleges only an arrest based on assertedly false information.  Redacted Compl. ¶¶ 36–38.  Courts have consistently rejected IIED claims where the assertedly wrongful conduct was a false arrest, reasoning either that the brief detention that inheres in such a wrongful arrest is not "so outrageous . . . and so extreme" to support an IIED claim, *Williams v. City of Mount Vernon*, 428 F. Supp. 2d 146, 160 (S.D.N.Y. 2006); *Druschke*, 359 F. Supp. 2d at 313–15, or that IIED may not be used "as a substitute for an available traditional tort theory" like false arrest, *Dotson v. Farrugia*, 11-CV-1126 (PAE), 2012 WL 996997, at *9 (S.D.N.Y. Mar. 26, 2012).  Plaintiff therefore fails to adequately plead an IIED or NIED claim against Officers Andrews and Woodburn or Commissioner Sewell.

Plaintiff also does not adequately plead sufficiently extreme and outrageous conduct by Captain Cedillo.  In addition to alleging that Captain Cedillo falsely arrested him, plaintiff claims that Cedillo threatened to charge him with other crimes while he was handcuffed in Cedillo's office.  *See* Redacted Compl. ¶ 39; Opp'n to City Defs.' Mot. to Dismiss 12.  But just as false arrest does not rise to the level of IIED, threats of this type are insufficient to meet New York's high bar for an IIED claim.  *See Williams v. Campana*, No. 08-CV-4696 (CS), 2010 WL 11712643, at *9 (S.D.N.Y. Aug. 19, 2010) (collecting cases).  To sustain an IIED claim, a police officer's threats to arrest or charge generally must be accompanied by additional misconduct, such as a scheme to fabricate evidence, derogatory remarks, or extortion.  *See* Restatement (Second) of Torts

§ 46 ("[A]n attempt to extort money by a threat of arrest may make the actor liable even where the arrest, or the threat alone, would not do so."); *Brewton v. City of New York*, 550 F. Supp. 2d 355, 362 (E.D.N.Y. 2008) (dismissing IIED claim predicated on, *inter alia*, threat made during questioning at a police station that plaintiff "would be placed under arrest" for "filing a false report"); *Kirk v. Metro. Transp. Auth.*, No. 99-CV-3787 (RWS), 2001 WL 258605, at *8 (S.D.N.Y. Mar. 14, 2001) (granting summary judgment dismissing IIED claim predicated on police officer's "false accusations of crime and threats of prosecution" because although officer's statements "certainly crossed the line of acceptable police practice, . . . they do not rise to the level of 'outrageous'"), *abrogated on other grounds*, *Burg v. Gosselin*, 591 F.3d 95, 98–99 & n.5 (2d Cir. 2010).   Captain Cedillo's alleged misconduct here is therefore insufficiently extreme and outrageous to sustain plaintiff's IIED claim against him.

Plaintiff's allegations are similarly inadequate as to Adhikary.  Beyond Adhikary's alleged role in procuring plaintiff's false arrest, plaintiff's principal allegation underlying his IIED claim against Adhikary is that Adhikary told Ivanishina that he would shoot plaintiff if plaintiff came into their apartment.  *See* Redacted Compl. ¶ 13; Opp'n to Adhikary's Mot. to Dismiss 15.  While plaintiff claims this statement put him "in shock," Opp'n to Adhikary's Mot. to Dismiss 15, Adhikary remained behind a locked door "at all times" and was speaking to Ivanishina, not plaintiff, *see* Redacted Compl. ¶¶ 13, 16.  An isolated statement of this nature, without more, does not suffice to plead an IIED claim under New York law.  *See DiRuzza v. Lanza*, 685 F. App'x 34, 37 (2d Cir. 2017) (affirming dismissal of IIED claim for failing to allege conduct "ris[ing] to the extreme level necessary" for IIED where defendant, a police officer, repeatedly threatened violence against plaintiff in connection with plaintiff's "romantic involvement with [defendant]'s estranged wife," *see DiRuzza v. Village of Mamaroneck*, No. 14-CV-1776 (VB), 2014 WL

6670101, at *1 (S.D.N.Y. Oct. 6, 2014)); *Seltzer v. Bayer*, 709 N.Y.S.2d 21, 23 (App. Div. 2000) ("Those few claims of intentional infliction of emotional distress that have been upheld by this court were supported by allegations detailing a longstanding campaign of deliberate, systematic and malicious harassment of the plaintiff.").

Finally, New York law does not allow IIED claims against the City. *See Morales v. United States*, 18-CV-4247 (CBA), 2023 WL 2129580, at *8 (E.D.N.Y. Feb. 17, 2023); *Rivera v. City of New York*, 392 F. Supp. 2d 644, 657 (S.D.N.Y. 2005).

Plaintiff therefore fails to adequately plead an IIED claim against any moving defendant.

**B.  Plaintiff fails to adequately plead an NIED claim against any moving defendant.**

Plaintiff's NIED claims against the moving defendants also fail.

The type of NIED claim that plaintiff pleads requires that the defendant breached a "duty of care resulting directly in emotional harm." *Ornstein v. N.Y.C. Health & Hosps. Corp.*, 881 N.E.2d 1187, 1189 (N.Y. 2008) (quotation marks and citation omitted). That duty "must be specific to the plaintiff, and not some amorphous, free-floating duty to society." *Tigano v. United States*, 527 F. Supp. 3d 232, 249 (E.D.N.Y. 2021) (citation omitted).

Plaintiff has not adequately alleged that any moving defendant owed him the sort of specific duty necessary to sustain an NIED claim. Plaintiff suggests that each moving defendant owed him a duty "to uphold the law," which was breached through plaintiff's false arrest. *See* Opp'n to Adhikary's Mot. to Dismiss 15. But the duty to uphold the law cannot sustain plaintiff's NIED claim because it is owed not to plaintiff specifically, but to the public generally. *See, e.g.*, *Kraft v. City of New York*, 696 F. Supp. 2d 403, 424 (S.D.N.Y. 2010) ("[W]hile the police defendants may owe a general duty to the public, they did not owe any specific duty to [the] plaintiff" when they transported him to a mental hospital), *aff'd*, 441 F. App'x 24 (2d Cir. 2011).

Plaintiff therefore fails to adequately plead an NIED claim against a moving defendant.

**CONCLUSION**

The City defendants' motion to dismiss is denied as to plaintiff's false-arrest claims against Captain Cedillo.  Plaintiff's Section 1983 claims against the City, his IIED and NIED claims, his false-arrest and malicious-prosecution claims against Adhikary, and his false-arrest claims against Officers Andrews and Woodburn are dismissed without prejudice.

If plaintiff wishes to amend his pleadings, he shall file a motion within 30 days of the issuance of this order seeking leave to amend with the proposed Amended Complaint attached as an exhibit.  The motion should explain how the proposed Amended Complaint addresses the pleading defects identified in this opinion.  Plaintiff is advised that the Amended Complaint will replace his complaint.  All further proceedings are stayed for thirty days.  If plaintiff does not file a motion to amend within 30 days, the case will proceed on his remaining claims.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated:  September 30, 2024
         Brooklyn, New York