UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x

ILYA FELIKSOVICH IOSILEVICH,

Plaintiff,

v.

CAPTAIN ALEXANDER R. CEDILLO, OFFICER PETER WOODBURN, OFFICER JONATHAN ANDREWS, JULIA ADHIKARY a/k/a JULIA NIKOLAYEVNA IVANISHINA, and JOHN DOES #4–5,

Defendants.

---------------------------------------------------x

**MEMORANDUM AND ORDER**
22-CV-3714 (RPK) (SDE)

RACHEL P. KOVNER, United States District Judge:

In this action, plaintiff Ilya Feliksovich Iosilevich, proceeding *pro se*, accuses three New York Police Department ("NYPD") officers, his ex-wife, and two John Doe defendants of misconduct relating to an incident at his ex-wife's apartment. Plaintiff and the NYPD defendants have both moved for summary judgment. For the reasons set forth below, plaintiff's motion is denied and the NYPD defendants' motion is granted.

## BACKGROUND

The following facts are taken from the parties' Rule 56.1 statements or relevant portions of the record and are undisputed unless otherwise noted.

Plaintiff is a former NYPD officer. Defs.' Mem. in Supp. of Summ. J. 7 (Dkt. #71); Pl.'s Mem. in Supp. of Summ. J. 9 (Dkt. #72) (ECF pagination). He and defendant Julia Ivanishina were previously married. Defs.' Rule 56.1 Statement ("Defs.' Statement") ¶ 1 (Dkt. #71-1). After

they divorced, plaintiff married Oksana Kovtun and Ivanishina married Pronab Adhikary. *Id.* ¶¶ 12, 15. Adhikary was also an NYPD officer. *Id.* ¶ 12.

## I. Police Reports

On January 26, 2016, Ivanishina called the NYPD's Internal Affairs Bureau to report that plaintiff had "punched" her on April 21, 2014. *See* Pl.'s Mem. in Supp. of Summ. J. Ex. ("Pl.'s Exhibits") 146 (Dkt. #72-1) (ECF pagination). An NYPD officer then prepared a memorandum about the report. *Ibid.* According to the memorandum, Ivanishina fell to the ground after being punched and "felt what she described as a kick to the right side of her head causing pain, bruising and bleeding." *Ibid.* She provided NYPD officers with papers documenting a hospital visit on that date. *Id.* at 147. As a result of Ivanishina's call and the ensuing investigation, the NYPD placed plaintiff, who was still an officer at that time, on "Modified Assignment." *Id.* at 148.

On January 30, 2021, Ivanishina called 911. Defs.' Mem. in Supp. of Summ. J. Ex. F ("Ex. F") 1 (Dkt. #71-9). According to the call log, she told the dispatcher that plaintiff was "banging on [her] door," she was "very scared," and there was a "history of violence." *Ibid.* Less than an hour later, she filed a domestic incident report with the NYPD. *See* Defs.' Mem. in Supp. of Summ. J. Ex. B ("Ex. B") 1 (Dkt. #71-5). In the report, she stated that plaintiff "appeared at" the front door of her apartment "shouting and kicking" the door and "making threatening comments." *Ibid.* She explained that she "did not open door and told him to go away but [he] kept going for 20 minutes," and that he "was shouting through door but unclear on what he said." *Ibid.* She also reported that he had "been very violent with her" in the past and that he had been "harassing [her] via emails [and] phone calls," including an email "calling her a pros[t]itute." *Ibid.*

On February 3, 2021, Ivanishina, Kovtun, and Adhikary walked into the 63rd NYPD precinct to make additional reports concerning plaintiff. Defendant Alexander R. Cedillo, an NYPD Captain, interviewed Ivanishina. *See* Defs.' Mem. in Supp. of Summ. J. Ex. A ("Ex. A")

(Dkt. #71-4). In the interview, Ivanishina told Captain Cedillo about the incident in which plaintiff punched her on April 21, 2014. *See generally ibid.* She also filed a written report stating that plaintiff "brutally attacked" her on that date by pushing her to the ground, punching her, and hitting her in the head with a heavy object. Defs.' Mem. in Supp. of Summ. J. Ex. D ("Ex. D") 2 (Dkt. #71-7). She added that the hit caused a "hematoma on my forehead," but that plaintiff "refused calling [an] ambulance for" her. *Ibid.* She explained that "I was very scared for my son safety and my own life that is why I never wanted to make [plaintiff] mad by filing police report about that incident." *Ibid.* In addition, she provided papers documenting a hospital visit on the relevant date at which she was diagnosed with a concussion and an "intracranial injury of other unspecified nature." Defs.' Statement ¶ 11; Ex. A at 33:00.

Captain Cedillo also interviewed Kovtun. *See* Defs.' Mem. in Supp. of Summ. J. Ex. J ("Ex. J") (Dkt. #71-13). In the interview, Kovtun told Captain Cedillo that plaintiff had been getting more violent over the preceding six months and had called her on the phone at least three times that day to express his rage. *See id.* at 3:40, 35:00. On the phone, plaintiff told her that Adhikary had "st[olen] my wife and ruined my life and . . . I need to have revenge," and also that "I want to broke his skull, and only after this I will be quiet." *Id.* at 19:10, 19:45. When Kovtun told plaintiff that she wanted a divorce, he warned that if she left him or reported him to the authorities, she would "need to watch [her] back," and that he would "find [her] everywhere as [he] always find[s] [Ivanishina]." *Id.* at 25:00, 38:00.

During her interview, Kovtun filed a written report containing similar information. *See* Defs.' Mem. in Supp. of Summ. J. Ex. C ("Ex. C") (Dkt. #71-6). She wrote that plaintiff "will sacrifice me and my kids just to get" revenge against Adhikary and that he "don't care if he will get 15 years in prison." *Id.* at 2. "It [is] really scary and I [am] afraid of his actions not only about

[Adhikary]," she added, but "about me also." *Ibid.* An NYPD officer wrote in the report that plaintiff told Kovtun over the phone "that if [she] were to obtain an order of protection, try to divorce him, or take any legal action against him, or go to the police or anything at all, . . . he will constantly follow [her] like he has done to his ex-wife." *Id.* at 1.

Captain Cedillo also spoke to Adhikary. According to a same-day report Captain Cedillo prepared about the interaction, Adhikary had been "advised by his parents," with whom he lived, that plaintiff had called their home and told them "that [Adhikary] better leave his ex-girlfriend [Ivanishina] or there will be consequences." Defs.' Mem. in Supp. of Summ. J. Ex. H ("Ex. H") 1 (Dkt. #71-11). Adhikary explained that "he never spoke to [plaintiff] and doesn't know how [plaintiff] attained his phone number." *Ibid.* Adhikary then filed a complaint reporting that plaintiff had "made threatening comments towards" him on the phone on January 17, 2021. Defs.' Mem. in Supp. of Summ. J. Ex. G ("Ex. G") 2 (Dkt. #71-10).

In Captain Cedillo's report, he noted that plaintiff "is known to the Department and has been cited as a perpetrator on six (6) Complaint Reports as well as three (3) Domestic Incident reports." Ex. H at 1. Captain Cedillo explained that he "assessed the domestic violence allegations . . . and deemed this incident an imminent threat" to Ivanishina and Kovtun "due to the severity of the statement made and the individual's violent behavior." *Id.* at 2. He proceeded to order plaintiff's arrest. *Ibid.*

## II. Arrest and Prosecution

On February 4, 2021, plaintiff was arrested by defendant NYPD Officers Jonathan Andrews and Peter Woodburn. Defs.' Statement ¶ 21. Two arrest reports were filed. One arrest report, which related to Ivanishina's complaint, listed the following arrest charges: assault in the second degree under New York Penal Law § 120.05(2), assault in the third degree under New York Penal Law § 120.00(1), and menacing in the second degree under New York Penal Law

§ 120.14(1). Defs.' Mem. in Supp. of Summ. J. Ex. M ("Ex. M") 1 (Dkt. #71-16); Defs.' Statement ¶ 23. The other arrest report, which related to Kovtun's complaint, listed the following arrest charges: criminal mischief in the third degree under New York Penal Law § 145.05(2), aggravated harassment in the second degree under New York Penal Law § 240.30(2), and witness tampering in the fourth degree under New York Penal Law § 215.10(a). Defs.' Mem. in Supp. of Summ. J. Ex. L ("Ex. L") 1 (Dkt. #71-15); Defs.' Statement ¶ 22.

That same day, a legal assistant at the Kings County District Attorney's Office interviewed Ivanishina and filed a complaint in the New York City Criminal Court, Kings County. *See* Defs.' Mem. in Supp. of Summ. J. Ex. N ("Ex. N") 1 (Dkt. #71-17). The criminal complaint stated that "the source of [the legal assistant's] information and the grounds for [his] belief" was his interview of Ivanishina. *Ibid.* It charged plaintiff with aggravated harassment in the second degree under New York Penal Law § 240.30(1)(a) and (1)(b), stalking in the fourth degree under New York Penal Law § 120.45(1), and harassment in the second degree under New York Penal Law § 240.26(1). Ex. N at 1. Those charges were later dismissed. Defs.' Statement ¶ 27; *see* Defs.' Mem. in Supp. of Summ. J. Ex. O ("Ex. O") 1 (Dkt. #71-18).

The record does not contain an additional criminal complaint. Defendants assert, however, that "[t]he District Attorney's Office" also "prosecuted plaintiff on the same charges for which he was arrested regarding Kovtun." Defs.' Mem. in Supp. 15 n.7. The record contains conflicting information about the precise nature of these charges. A notice pursuant to New York Criminal Procedure Law § 370.15, dated February 4, 2021, says plaintiff was charged with aggravated harassment in the second degree under New York Penal Law § 240.30(1)(a), (1)(b), and (2), *see* Pl.'s Exhibits at 38, which is not the same set of charges for which plaintiff was arrested regarding Kovtun. A certificate of disposition, dated March 8, 2023, says charges for aggravated harassment

in the second degree under New York Penal Law § 240.30(1)(a), (1)(b), and (2), as well as for harassment in the second degree under New York Penal Law § 240.26, were adjourned in contemplation of dismissal. *See* Defs.' Mem. in Supp. of Summ. J. Ex. P ("Ex. P") 1 (Dkt. #71-19). The parties agree that this second set of charges, whatever its precise composition, related to plaintiff's conduct towards Kovtun, whereas the charges in the criminal complaint above related to plaintiff's conduct towards Ivanishina. Defs.' Statement ¶¶ 25, 27–29.

### III. This Lawsuit

On June 22, 2022, plaintiff filed this action. *See* Compl. (Dkt. #1). After dismissal of several defendants and claims, what remains are (1) false arrest claims against Captain Cedillo under 42 U.S.C. § 1983 and state law; (2) malicious prosecution claims against Captain Cedillo, Officer Andrews, and Officer Woodburn (the "NYPD defendants") under Section 1983 and state law; and (3) claims for intentional and negligent infliction of emotional distress against Ivanishina and Adhikary's parents, who are identified as John Does #4 and #5. *See* May 3, 2023 Mem. & Order (Dkt. #4); *Iosilevich v. City of New York*, No. 22-CV-3714 (RPK) (LB), 2023 WL 3231597 (E.D.N.Y. May 3, 2023); *see also* Sep. 30, 2024 Mem. & Order (Dkt. #46); *Iosilevich v. City of New York*, No. 22-CV-3714 (RPK) (LB), 2024 WL 4362510 (E.D.N.Y. Sep. 30, 2024). Ivanishina and Adhikary's parents appear to have never been served with the summons and complaint.

The NYPD defendants now move for summary judgment on all claims against them. *See* Defs.' Mem. in Supp.; Pl.'s Mem. in Opp'n to Summ. J. (Dkt. #74); Defs.' Reply in Supp. of Summ. J. (Dkt. #75). Plaintiff cross-moves for summary judgment on all claims against all defendants. *See* Pl.'s Mem. in Supp.; Defs.' Mem. in Opp'n to Summ. J. (Dkt. #73).

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine

dispute of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (citation and quotation marks omitted). "A fact is material if it might affect the outcome of the suit under governing law." *Ibid.* (citation and quotation marks omitted). In determining whether there is a genuine issue of material fact, a court evaluates the whole record, resolving all ambiguities and drawing all reasonable factual inferences in favor of the non-movant. *See ibid.* A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). When parties cross-move for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

A court "is ordinarily obligated to afford a special solicitude to pro se litigants . . . particularly where motions for summary judgment are concerned." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (citations and quotation marks omitted). *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir. 2006) (citation and quotation marks omitted).

## DISCUSSION

The NYPD defendants' motion for summary judgment is granted, and plaintiff's motion for summary judgment is denied.

**I. The NYPD defendants are entitled to summary judgment on plaintiff's false-arrest and malicious-prosecution claims.**

**A. False Arrest**

Captain Cedillo is entitled to summary judgment on plaintiff's false-arrest claims because he had at least arguable probable cause to arrest plaintiff for, at minimum, assault in the third degree and aggravated harassment in the second degree.

Under the Fourth Amendment, "[t]he elements of a false arrest . . . claim are that (1) a 'defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (citation omitted). "Claims for false arrest brought under Section 1983 are substantially the same as claims for false arrest under state law." *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (quotation marks and citation omitted). An arrest is privileged if "the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (citation omitted). An "arresting officer need not have probable cause with respect to . . . any charge actually invoked by the arresting officer," so long as "the officer had probable cause to make an arrest for any crime . . . at the time of the arrest." *Simpson v. City of New York*, 793 F.3d 259, 267 (2d Cir. 2015) (quotation marks and citation omitted).

Probable cause exists when a law enforcement officer has "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *United States v. Diaz*, 854 F.3d 197, 203 (2d Cir. 2017) (citation omitted). A "victim's identification is typically sufficient to provide probable cause," unless circumstances "raise doubts

as to the victim's veracity." *Stansbury v. Wertman*, 721 F.3d 84, 90 (2d Cir. 2013) (citation omitted).

A police officer is entitled to qualified immunity for false arrest if the officer had at least "arguable probable cause to arrest the plaintiff." *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016) (quotation marks and citation omitted). Arguable probable cause exists if either (1) "it was objectively reasonable for the officer to believe that probable cause existed," or (2) "officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* at 633 (citation omitted). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

**1. Assault in the Third Degree**

Captain Cedillo had at least arguable probable cause to order plaintiff's arrest for assault in the third degree. "A person is guilty of assault in the third degree when" he "intent[ionally]" or "recklessly" "causes[s] physical injury to another person." N.Y. Penal Law § 120.00. Physical injury includes "impairment of physical condition or substantial pain." *Id.* § 10.00(9). "A person acts intentionally with respect to a result . . . when his conscious objective is to cause such result," *id.* § 15.05(1), and "recklessly with respect to a result . . . when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur," *id.* § 15.05(3).

A reasonable officer could believe, on the basis of the information known to Captain Cedillo, that plaintiff's conduct towards Ivanishina on April 21, 2014 qualified as assault in the third degree. Ivanishina told Captain Cedillo that plaintiff gave her a "hematoma" on her forehead, Ex. D at 2, and provided documents substantiating that she was diagnosed with a concussion and an "intracranial injury" on the relevant date, Ex. A at 33:00. That information suggests that plaintiff caused her "more than slight or trivial pain," which is sufficient to qualify as physical

injury. *People v. Chiddick*, 8 N.Y.3d 445, 447 (2007). In explaining her injuries, Ivanishina told Captain Cedillo that plaintiff "brutally attacked" her by pushing her to the ground and "punching and slapping [her] all over [her] body" while she "covered [her] face with [her] hands." Ex. D at 2. He then "grabbed a heavy object and struck [her] in the head" with it. *Id.* at 1–2. Those statements suggest that his conduct was either intentional or reckless. *See In re Kareem E.*, 255 N.Y.S.3d 490, 495–96 (App. Div. 2026) (holding that an individual who "landed several punches to the other individual's face, head or neck" committed assault in the third degree); *Kneitel v. City of New York*, No. 15-CV-6942 (NGG) (LKE), 2025 WL 2712136, at *8 (E.D.N.Y. Sep. 23, 2025) (finding probable cause to arrest for assault in the third degree where an individual "punched [another] in the back and then to the face, causing him to fall to the ground" (citation omitted)).

The Court previously denied Captain Cedillo's motion to dismiss the false-arrest claim on the basis that the "complaint allege[d] circumstances that plausibly should have raised doubts for Captain Cedillo as to Ivanishina's veracity" as a complainant. *Iosilevich*, 2024 WL 4362510, at *4. "Specifically, the complaint allege[d] that Captain Cedillo . . . knew that plaintiff 'was investigated for [that] 2014 incident . . . and [that he] was cleared by [t]he [NYPD's] Internal Affairs Bureau.'" *Ibid.* (citation omitted). The record is different at summary judgment. It is now undisputed that a memorandum prepared by the NYPD Internal Affairs Bureau found Ivanishina's allegations about the April 21, 2014 incident concerning enough to merit placing plaintiff on "Modified Assignment"—a preliminary disciplinary status that involved the removal of firearms pending further investigation. *See* Pl.'s Exhibits 148–49; *cf.* N.Y.C. Police Dep't Admin. Guide Procedure Nos. 318-05, 318-08 (2026) (defining "Modified Assignment"). The only evidence plaintiff points to in support of his assertion that he was ultimately "cleared" is the fact that no criminal charges were brought against him at the time. *See* Pl.'s Mem. in Opp'n 20. But a lack of

criminal charges does not, on its own, mean that he was cleared. It could, for example, mean "that the investigator was not provided with the adequate resources, and leads and recommendations for additional investigation were ignored." *Jenkins v. City of New York*, 388 F. Supp. 3d 179, 188 (E.D.N.Y. 2019) (citation omitted). A reasonable officer aware that Ivanishina previously reported the 2014 incident and that the NYPD placed plaintiff on "Modified Assignment" during its investigation, but that no criminal charges were filed at that time, could nevertheless determine that Ivanishina's 2021 description of the incident—corroborated by medical documents—was credible enough to establish probable cause.

Nor does Ivanishina's status as plaintiff's ex-wife so diminish her veracity as to defeat arguable probable cause. It is true generally that a complainant's "bitter prior relationship" with an accused party might raise enough doubts about the complainant's veracity that an officer should "investigate further." *Sankar v. City of New York*, 867 F. Supp. 2d 297, 306 (E.D.N.Y. 2012) (citation omitted). For example, the complainant's status as the accused's former spouse might "give rise to a motive for a false accusation." *Jin v. City of New York*, 169 F.4th 373, 384–85 (2d Cir. 2026) (citation omitted). "[O]ftentimes," however, "the only eyewitnesses to domestic violence are the assailant and his or her victims. If police were obligated to discredit a victim's account of the events solely because of acrimonious history between the parties, these violent crimes would go virtually unprosecuted." *Id.* at 385 (citation omitted). Moreover, here, Captain Cedillo did investigate further. He reviewed corroborating medical records; queried police records and determined that plaintiff had been the subject of other domestic incident reports; and performed interviews in which two other individuals recounted conversations in which plaintiff displayed rageful and controlling emotions regarding Ivanishina.

Plaintiff argues Captain Cedillo lacked arguable probable cause to arrest him because the statute of limitations on charges related to the 2014 incident had already lapsed. Pl.'s Mem. in Opp'n 8. It is true that the incident occurred in 2014, that the arrest occurred in 2021, and that New York's statute of limitations on assault in the third degree is two years. N.Y. Crim. Proc. Law § 30.10(2)(c). But plaintiff points to no legal authority for the proposition that a lapsed statute of limitations defeats probable cause. The consensus among district courts in this circuit, and among the circuit courts that have addressed the question, appears to be the opposite: a "statute of limitations is neither an element of the crime, nor a necessary component of probable cause" at the time of arrest. *Sullivan v. LaPlante*, No. 03-CV-359 (OGS), 2005 WL 1972555, at *7 (N.D.N.Y. Aug. 16, 2005), *aff'd*, 175 F. App'x 484 (2d Cir. 2006); *see King v. United States*, No. 16-CV-2565 (LDH) (RER), 2020 WL 1234236, at *4 (E.D.N.Y. Mar. 13, 2020); *Johnson v. City of New York*, No. 15-CV-1625 (SMG), 2017 WL 1476139, at *8 (E.D.N.Y. Apr. 24, 2017); *Simpson v. Town of Warwick Police Dep't*, 159 F. Supp. 3d 419, 438 & n.19 (S.D.N.Y. 2016); *see also Sands v. McCormick*, 502 F.3d 263, 269–70 (3d Cir. 2007); *Pickens v. Hollowell*, 59 F.3d 1203, 1207–08 (11th Cir. 1995). Courts have therefore consistently rejected false-arrest and malicious-prosecution claims premised on the theory that an officer should have declined to initiate charges based on the statute of limitations. *See, e.g., Sullivan*, 2005 WL 1972555, at *7–8; *Simpson*, 159 F. Supp. 3d at 438. Given that authority, plaintiff's statute-of-limitations argument does not undermine Captain Cedillo's arguable probable cause.

In sum, "officers of reasonable competence could disagree on whether the probable cause test was met." *Myers*, 819 F.3d at 632. Accordingly, Captain Cedillo had arguable probable cause to arrest plaintiff for assault in the third degree.

**2. Aggravated Harassment in the Second Degree**

Captain Cedillo had at least arguable probable cause to order plaintiff's arrest for aggravated harassment in the second degree. "A person is guilty of aggravated harassment in the second degree when . . . [w]ith intent to harass or threaten another person, he or she makes a telephone call . . . with no purpose of legitimate communication." N.Y. Penal Law § 240.30(2). "Such intent may, and in most instances must, be established by inferences drawn from the surrounding circumstances . . ., and [i]ntent may be inferred from the totality of conduct of the [actor]." *Dhir v. Winslow*, 205 N.Y.S.3d 595, 598 (App. Div. 2024) (citation omitted).

A reasonable officer could believe, on the basis of the information known to Captain Cedillo, that plaintiff committed aggravated harassment in the second degree by calling Adhikary's home. According to the reports Captain Cedillo received from Adhikary, plaintiff had obtained Adhikary's home phone number despite having "never" spoken to Adhikary, then placed a phone call to that number in which he "made threatening comments towards" Adhikary, including "that [Adhikary] better leave his ex-girlfriend [Ivanishina] or there will be consequences." Ex. H at 1; Ex. G at 2. The threatening nature of plaintiff's comments, as well as "the fact that his advances were clearly unwelcome," suggest that plaintiff's purpose in making the call was to harass or threaten Adhikary. *People v. Doherty*, 105 N.Y.S.3d 77, 78 (App. Div. 2019); *see Victor S. v. Kareem J.S.*, 961 N.Y.S.2d 52, 53 (App. Div. 2013) (inferring caller had an intent to threaten or harass because he delivered a "threat that specifically referred to placing the safety of [someone] in jeopardy"); *Brant v. Widger*, 114 N.Y.S.3d 549, 550 (App. Div. 2019) (concluding evidence was sufficient to sustain conviction under § 240.30(2) where caller stated the recipient was "a pathetic piece of sh--" and told him that he "deserve[d] to die" and "sit in jail forever").

**B. Malicious Prosecution**

Captain Cedillo, Officer Andrews, and Officer Woodburn are entitled to summary judgment on plaintiff's malicious-prosecution claims because no reasonable jury could conclude that they initiated criminal proceedings against plaintiff.

Under New York law, "the four essential elements of a malicious prosecution claim are: '(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice.'" *Dufort v. City of New York*, 874 F.3d 338, 350 (2d Cir. 2017) (quoting *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (2000)). "[T]he merits of a claim for malicious prosecution under § 1983 are governed by state law." *Ibid.*

As to the first element, "when a plaintiff pursues a claim of malicious prosecution against police officers based on an 'unlawful arrest,' the 'intervening exercise of independent judgment' by a prosecutor to pursue the case usually breaks the 'chain of causation.'" *Id.* at 352 (citation omitted); *see Hartman v. Moore*, 547 U.S. 250, 263 (2006). "[T]here is a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding." *Marom v. Town of Greenburgh*, No. 13-CV-4733 (NSR), 2017 WL 1064682, at *2 (S.D.N.Y. Mar. 20, 2017), *aff'd*, 722 F. App'x 32 (2d Cir. 2018) (citation omitted). "[A] plaintiff may overcome that presumption by demonstrating that 'the defendant played an active role in the prosecution.'" *Ibid.* (citation omitted). For example, "courts have found a triable issue of fact as to the initiation element where the defendant-officer brought formal charges and had the person arraigned, filled out complaining and corroborating affidavits, swore to and signed a felony complaint, or created false information and forwarded it to prosecutors." *King v. City of New York*, No. 12-CV-2344 (NGG) (RER), 2014 WL 4954621, at *21 (E.D.N.Y. Sep. 30, 2014) (citation omitted); *see Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) ("Under New York

law, police officers can 'initiate' prosecution by filing charges or other accusatory instruments."); *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) (noting that a police officer might initiate criminal proceedings by "giving advice and encouragement or importuning the authorities to act" (citation omitted)). But the plaintiff must demonstrate that the officer did "more than report the crime." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010).

Here, the criminal complaint filed by the Kings County District Attorney's Office makes clear on its face that the legal assistant who prepared it exercised independent judgment. It states that "the source of [his] information and the grounds for [his] belief" was his own interview of Ivanishina, not information transmitted to him by defendants. Ex. N at 1. It then charges plaintiff with different crimes than the ones for which he was arrested. *Compare* Ex. M at 1 (arresting plaintiff under New York Penal Law §§ 120.00(1), 120.05(2), 120.14(1)), *and* Ex. L at 1 (arresting plaintiff under §§ 145.05(2), 215.10(a), 240.30(2)), *with* Ex. N at 1 (criminally charging plaintiff under §§ 120.45(1), 240.26(1), 240.30(1)(a), 240.30(1)(b)). Plaintiff has not produced any evidence that defendants misled or pressured the legal assistant or other staff in the District Attorney's Office. Accordingly, plaintiff cannot sustain a malicious-prosecution claim against defendants as to the charges brought in the criminal complaint. *See King*, 2014 WL 4954621, at *21 (rejecting a malicious-prosecution claim against a police officer where the criminal complaint was "signed by a legal assistant of the Kings County District Attorney's Office . . . and was based on information told to her by the alleged victim").

Nor can plaintiff sustain a malicious-prosecution claim against defendants as to the other charges brought against him. The record is not clear about the other counts with which plaintiff was charged. But whatever the charges were, plaintiff has pointed to no evidence that Captain Cedillo, Officer Andrews, or Officer Woodburn filed them, pressured the District Attorney's

Office to file them, created false information on which they were based, or otherwise played an active role in bringing them. Instead, the evidence to which plaintiff points reveals at most that defendants investigated and "report[ed] the crime." *Manganiello*, 612 F.3d at 161. As a result, no reasonable jury could conclude that they initiated criminal proceedings against plaintiff.

Plaintiff argues that "[t]he District Attorney's presumption of independent judgment is rebutted here" because the charges were later dismissed or adjourned in contemplation of dismissal. Pl.'s Mem. in Opp'n 20. But whether an individual commenced criminal proceedings and whether those proceedings ultimately terminated in the accused's favor are distinct elements of the malicious-prosecution inquiry. *See Dufort*, 874 F.3d at 350. The latter does not necessarily shed light on the former, and plaintiff has not presented any evidence that would suggest the dismissal of charges against him indicated that prosecutors failed to exercise independent judgment at the outset. *Cf. Nunez v. Village of Rockville Centre*, No. 18-CV-4249 (DRH) (SIL), 2022 WL 523753, at *10 (E.D.N.Y. Feb. 22, 2022) ("The fact that charges against an arrestee are eventually dropped, or that he is acquitted after trial, has 'no bearing on' the determination of whether probable cause existed." (citation omitted)).

## II. Plaintiff is not entitled to summary judgment on any of his claims.

Plaintiff is not entitled to summary judgment on his false-arrest and malicious-prosecution claims against the NYPD defendants for the reasons outlined in the preceding section. He is not entitled to summary judgment on his remaining claims—which assert intentional and negligent infliction of emotional distress against Ivanishina and Adhikary's parents—because those defendants have not yet been served with the summons and complaint. "In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999); *see Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)

("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."). If those parties are properly served, defendant may renew his motion for summary judgment against them.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for summary judgment is denied and the NYPD defendants' motion for summary judgment is granted. The only claims now remaining in this action are the claims for intentional and negligent infliction of emotional distress against Ivanishina and Adhikary's parents.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: September 28, 2026
Brooklyn, New York